UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEREK W. CASHAW,

    Plaintiff,

v.                                       CASE NO. 3:16-cv-1253-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). Plaintiff claims that he became disabled on May 30, 2009. (Tr. 173-74, 202.) The application was denied initially and on reconsideration. A hearing was held in front of an administrative law judge ("ALJ") on December 11, 2014. (Tr. 38-62.) The ALJ rendered a decision on April 21, 2015, finding Plaintiff not disabled from May 30, 2009, the alleged onset date, through December 31, 2014, the date last insured.[2]

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 16, 18.)

[2] Plaintiff had to establish disability on or before December 31, 2014, his date last insured, in order to be entitled to a period of disability and DIB.

Plaintiff is appealing the Commissioner's decision that he was not disabled from May 30, 2009 through December 31, 2014.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED**.

I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

Plaintiff argues two general points on appeal.  First, Plaintiff argues that the ALJ improperly rejected the opinions of his treating physician, Dr. Haghighi. Specifically, Plaintiff contends the ALJ failed to articulate good cause for discounting Dr. Haghighi's opinions contained within a Treating Source Orthopedic Questionnaire rendered on September 18, 2012 ("Orthopedic Questionnaire"), and an Arthritis Medical Source Statement rendered on July 18, 2014 ("MSS").  Plaintiff also argues that the ALJ erred by misconstruing Dr. Haghighi's opinions set forth in a document entitled "Listing 1.02B– Major Dysfunction Of A Major Peripheral Joint" ("Listing Questionnaire"), and dated July 18, 2014.  Second, Plaintiff contends that the ALJ erred by affording significant weight to the non-examining physician, Robert Steele, M.D., because the ALJ failed to explain why he rejected certain limitations prescribed by Dr. Steele in the RFC determination.  The Commissioner argues that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence.

## A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight

4

than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam). *See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including

"osteoarthritis of the left ankle, history of meniscus tear, osteoarthritis of the right knee, history of left tibial fracture status post open reduction and internal fixation, lumbar degenerative disc disease, and history of bilateral rotator cuff tear/impingement. (Tr. 16 (internal citation omitted).) The ALJ then found that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments because "no treating or examining physicians have reported findings similar in severity to the description provided for any impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))." (Tr. 19-20.) At step four[3], the ALJ found, in relevant part, that Plaintiff had the RFC to:

> perform less than light work . . . [Plaintiff] is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. He requires a 30 minute sit/stand option. [Plaintiff] is restricted to occasionally climbing ramps/stairs and stooping. He cannot climb ladders/ropes/scaffolds, balance, kneel, crouch, or crawl. [Plaintiff] cannot reach overhead. He is limited to frequently handling and fingering bilaterally. He should avoid concentrated exposure to extremes in cold, wetness, and humidity. [Plaintiff] requires the use of a handheld assistive device to reach the workstation, but does not require it at the workstation.

(Tr. 20.) The ALJ then determined that Plaintiff was able to perform his past

---

[3] A five-step sequential evaluation process has been established by the Social Security Administration in the Social Security Act, which is used to determine whether an individual is disabled or not (20 C.F.R. § 404.1520(a)).

relevant work as a telemarketer. (Tr. 28.) As such, the ALJ found that Plaintiff was not disabled during the relevant period. (*Id*.)

   C.   Analysis

Plaintiff argues that the ALJ erred in his treatment of Dr. Haghighi's opinions in the decision. The undersigned agrees.

Prior to treating with Dr. Haghighi, Plaintiff obtained medical treatment for problems associated with his right knee, right shoulder, and lumbar spine. In 2003, Plaintiff underwent MRIs of his right knee and right shoulder. (Tr. 1537-38.) The MRI of the right shoulder showed a partial right supraspinatus tear with retraction of the tendon and the MRI of the right knee showed mild to moderate degenerative changes. (*Id*.) Plaintiff was treated in 2010 at the Veterans Affairs Clinic for problems associated with his lower back and right ankle. (Tr. 954-58, 965-71.)

Dr. Haghighi started treating Plaintiff in August 2010 due to various complaints, including ankle and shoulder pain. (Tr. 319-53.) On July 12, 2011, Plaintiff was hit by a car. (Tr. 772-74, 786-816.) Plaintiff fractured his tibia and fibula (Tr. 806), and sustained injuries to his left hip (Tr. 807). Upon request of the state agency, Dr. Haghighi completed the Orthopedic Questionnaire on September 18, 2012. (Tr. 1779-80.) Dr. Haghighi opined that Plaintiff experienced decreased ability to perform fine manipulation, gait disturbance,

7

fracture, and limited range of motion due to his history of lower leg fracture, his shoulder surgeries, and his neck pain. (Tr. 1780.) Dr. Haghighi also found Plaintiff's grip and extremity strengths to be 2/5 and noted that Plaintiff was referred to a Veterans Affairs specialist for further evaluation. (Tr. 1780.)

In making Plaintiff's RFC determination, the ALJ accorded "little weight" to Dr. Haghighi's Orthopedic Questionnaire because it was from an "unidentified source," in that the ALJ apparently could not tell who in Dr. Haghighi's office signed the document because no printed name appeared next to the signature, and because it was inconsistent with Dr. Haghighi's August 2012 physical examination. (Tr. 23.) The ALJ further stated that Dr. Haghighi's August 2012 physical examination documented no grip strength deficits and that Dr. Haghighi's "progress notes consistently document[ed] [Plaintiff's] normal gait without ataxia or unsteadiness." (*Id*.)

On July 18, 2014, Dr. Haghighi completed the Listing Questionnaire and the MSS. The Listing Questionnaire sought Dr. Haghighi's opinion on whether Plaintiff's has an impairment:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imagining [sic] of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

8

> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2.

(Tr. 2157); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B. In seeking the opinion, the Listing Questionnaire presented a series of "Yes" or "No" boxes tracing the elements of Listing 1.02B, with certain lines provided for Dr. Haghighi's written explanation where applicable.

With respect to the Listing Questionnaire, Dr. Haghighi checked "Yes" that Plaintiff has "a major dysfunction of a major peripheral joint in each upper extremity (e.g., shoulder, elbow, or wrist-hand)," and identified the affected joints as "Rotator cuff (shoulder)." (Tr. 2157.) Dr. Haghighi also checked "Yes" in the boxes confirming that Plaintiff's dysfunction is based on findings or medically acceptable imaging, that evidence exists of chronic joint pain and stiffness in the affected joints, and that Plaintiff's restrictions include limited motion or other abnormal motion in his back and shoulder. (*Id.*)

Dr. Haghighi checked "No" in the box next to the poorly worded inquiry, "If your patient's [sic] unable to perform fine and gross movements effectively."[4] (Tr.

---
[4] The ability to perform fine and gross movements effectively is defined as the
(continued...)

9

2158.)  However, the very next inquiry in the Listing Questionnaire states, "If the clinical findings do not match **all** of the findings required above, are your patient's combines [sic] impairments medically **equivalent** to the severity of conditions in the above listed impairment?  (*Id.* (emphasis in original).)  Dr. Haghighi did not check the "Yes" or "No" box in relation to the inquiry but instead wrote, "They <u>do</u> match," next to the inquiry.[5]  (*Id.* (emphasis in original).)  In other words, Dr. Haghighi opined that his clinical findings matched *all* of the elements required for Plaintiff to meet Listing 1.02B, although he checked the box "No" with respect to Plaintiff's inability to perform fine and gross movements (one of the elements required to meet Listing 1.02B).

On that same date, Dr. Haghighi completed the MSS.  In it, he opined, *inter alia*, that, as a result of Plaintiff's impairments, he could sit about two hours and stand/walk less than two hours in an eight hour workday; would have to take unscheduled breaks very often during the work day; would have to elevate his legs above his heart about 30% of the workday; would have significant limitations with reaching, handling or fingering; would likely be off task 25% or more during

---

[4](...continued)
ability to sustain such functions as reaching, pushing, pulling, grasping, and fingering to carry out activities of daily living.  Examples of inability include, but are not limited to inability to sort and handle papers or file, to place files in a file cabinet at or above waist level, inability to effectively and independently take care of personal hygiene or prepare a simple meal and feed oneself.  (Tr. 2158.)

[5] It appears Dr. Haghighi initially checked "Yes," in response to whether the clinical findings medically equal the severity of the conditions in Listing 1.02B, but then crossed it out, stating "They <u>do</u> match."  (Tr. 2158.)

the workday; and would be absent from work more than four days per month.

The ALJ provided "significant weight" to Dr. Haghighi's Listing Questionnaire, because, according to the ALJ, Dr. Haghighi opined that Plaintiff's shoulder impairment does not meet the criteria of Listing 1.02B, based on the fact that Dr. Haghighi checked the box "No" with respect to whether Plaintiff was unable to perform fine and gross movements effectively. (Tr. 26.) However, the ALJ accorded "little weight" to Dr. Haghighi's opinions set forth in the MSS because it "provide[d] little insight as to the basis of Dr. Haghighi's conclusions," and because "the limitations he endorsed are not supported by his treatment records or the records of the orthopedic specialists throughout the record." (Tr. 27.)

The Court agrees with Plaintiff in that the ALJ's evaluation of Dr. Haghighi's opinions is not supported by substantial evidence. As an initial matter, the ALJ erred in his evaluation of the Listing Questionnaire. Although the ALJ gave "significant weight" to the Listing Questionnaire, it is apparent that Dr. Haghighi opined that Plaintiff *does meet* Listing 1.02B and his check mark "No" next to the inquiry regarding Plaintiff's inability to perform fine and gross movements effectively may have been a clerical error based on a poorly-phrased inquiry. Reading the Listing Questionnaire in context, Dr. Haghighi opined that his clinical findings "<u>do</u> match" all of the findings required to meet Listing 1.02B. Thus, if the ALJ provided "significant weight" to the Listing Questionnaire as a whole, then the

11

ALJ would have found that Plaintiff met Listing 1.02B.  However, the ALJ determined that "no treating or examining physicians have reported findings similar in severity to the description provided for any impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))."  (Tr. 19-20.)

At the very least, the opinions in Dr. Haghighi's Listing Questionnaire created an inconsistency or ambiguity in the record, and the ALJ's failure to resolve the inconsistency or ambiguity frustrates judicial review in this matter.[6] *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (holding that the ALJ has "a basic duty to develop a full and fair record"); *Cooper v. Astrue*, No. 2:07-cv-710-CSC, 2008 WL 2783270, at *3 (M.D. Ala. July 16, 2008) ("When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected an opinion regarding the plaintiff's capacity for work."); *see also Selian v. Astrue*, 708 F.3d 409, 418-19 (2d Cir. 2013) (holding that the ALJ erred in the evaluation of the treating physician where the ALJ ignored the context of the treating physician's full notation and made no effort to reconcile the apparent inconsistency within the notation); *Goble v.*

---

[6] The Commissioner argues that Dr. Haghighi's "internally inconsistent" opinions merely provided the ALJ a reason to discount the opinions.  However, this contention is unpersuasive as it is a *post hoc* rationalization that cannot be accepted by this Court. *See, e.g., Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) ("[A] court may not accept appellate counsel's *post hoc* rationalizations for agency actions.  If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.") (internal citations omitted).

12

*Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)) ("An ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). The Court cannot find that substantial evidence supports the ALJ's treatment of Dr. Haghighi's opinions where the ALJ ignored the full context of the Listing Questionnaire. *Cf. Yingling v. Colvin*, 3:14-cv-945-J-JRK, 2016 WL 1040004, at *7 (M.D. Fla. Mar. 16, 2016) ("Dr. Rosenblat having checked the "No" box when asked about significant limitations in this area, but then assigning various limitations, does appear to be inconsistent. This is just one portion of the overall detailed opinion, however, and . . . the ALJ did not provide adequate reasons for discounting the remainder of it.").

The ALJ similarly erred in his treatment of the Orthopedic Questionnaire by rendering a decision without addressing record inconsistencies. Specifically, while the ALJ acknowledged the Orthopedic Questionnaire contained an illegible signature rendering the source of the document "unidentifiable," he improperly used that as the primary reason for rejecting the opinions contained within the document rather than probing into, inquiring of, or exploring the facts relating to the source of the document.[7] *Cf. Patton v. Berryhill*, No. 8:16-cv-1365-T-27AAS,

---

[7] Dr. Haghighi's signature clearly identified on the Listing Questionnaire and MSS appears to be the same as the signature on the Orthopedic Questionnaire. *Compare*
(continued...)

2017 WL 6520474, at *4 (M.D. Fla. Dec. 18, 2017) (citing *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)) ("The ALJ's rejection of Dr. Azneer's opinions for the primary reason of the illegibility of the signatures was not substantially justified because the ALJ did not probe into, inquire of, or explore the facts relating to the source of the questionnaire responses.").

The Commissioner argues that the ALJ's rejection in that regard does not warrant remand because the ALJ set forth other reasons for rejecting the Orthopedic Questionnaire. However, the undersigned finds that substantial evidence does not support the other reasons provided by the ALJ. The ALJ found the Orthopedic Questionnaire to be inconsistent with Dr. Haghighi's August 2012 physical examination, stating that it documented "no strength deficits" and "normal gait without axatia or unsteadiness." (Tr. 23.) Contrary to the ALJ's statement, Dr. Haghighi did not find Plaintiff's gait to be "normal" but rather made "pertinent findings" with respect to Plaintiff's gait, including "decreased range of motion, instability, limping, pain with movement and weakness." (Tr. 2780.) With respect to Plaintiff's shoulder impairment, Dr. Haghighi similarly made "pertinent findings" including "limited range of motion, stiffness, loss of range of motion and loss of strength." (*Id*.)

Because the undersigned finds that the ALJ failed to properly analyze the

---

[7](...continued)
(Tr. 1780) *with* (Tr. 2158 & 2163.)

opinions of Dr. Haghighi, it is unnecessary to consider whether the ALJ properly relied on the opinions of Dr. Steele, a state agency reviewing physician. *See, e.g., Russ v. Astrue*, Case No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) ("The ALJ has not shown good cause for discounting the treating physician's opinion by clearly articulating his reasons and supporting them with the evidence. As such, the Court need not consider whether it was appropriate, in this circumstance, for the non-examining physician's opinion to override that of the treating physician."). Therefore, this case will be reversed and remanded with instructions to the ALJ to reconsider the opinions of Dr. Haghighi, explain what weight it is being accorded, and the reasons therefor. In doing so, the ALJ shall develop a full and fair record by resolving the record inconsistencies or ambiguities as explained above.

### III. Conclusion

Accordingly, it is hereby **ORDERED**:

1. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner, with instructions for the ALJ to: (a) reevaluate the medical opinions of Dr. Haghighi and explain what weight is being accorded to those opinions, and the reasons therefor; (b) develop a full and fair record consistent with this opinion; (c) reconsider the RFC assessment, if necessary, and (d) conduct any further proceedings deemed appropriate.

15

2. The Clerk of Court is directed to enter judgment consistent with this Order, and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 1, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record